Crooks Estate

*Albert J. Crawford, Jr.,* and *Smyth, Straub & Thistle,* for accountant.

*Robert E. Porter* and *Arthur C. Dorrance, Jr.,* for Provident Tradesmens Bank and Trust Company, guardian.

VAN RODEN, P. J., November 6, 1957.—Decedent died September 13, 1955, survived by her husband, Joseph Crooks, who is the present accountant, and by a minor daughter, Charlene V. Hart (by a previous marriage).

On September 19, 1955, the Register of Wills of Delaware County granted letters of administration to the surviving spouse, on the basis of his petition alleging that his wife died intestate.

Subsequent to the issuance of said letters of administration, two testamentary writings, one dated March 17, 1955, and the other undated, were found among decedent's effects.

On October 5, 1955, the surviving spouse filed a petition with the register of wills in which he requested

that the letters of administration be revoked and that he be granted letters of administration c. t. a. on the basis of the March 17th writing, which he alleged constituted decedent's will, and the undated writing, which he alleged was a codicil thereto.

On the same date, a caveat was filed on behalf of Charlene V. Hart, alleging that only the undated (but admittedly later) writing should be probated, since it constituted a revocation of the March 17th will.

On December 12, 1955, the register of wills entered a decree admitting to probate the March 17th writing and the undated writing as a codicil.

On appeal, this court entered a decree dated April 26, 1956, reversing the register of wills and ordering him to admit only the undated writing to probate as decedent's will: Crooks Estate, 43 Del. Co. 231. This decree was subsequently affirmed by the Supreme Court of Pennsylvania on March 18, 1957: Crooks Estate, 388 Pa. 125.

The said undated writing which was admitted to probate as decedent's last will and testament named Patricia Joanne Crooks as the sole beneficiary. However, the said Patricia Joanne Crooks predeceased testatrix on July 2, 1955, whereupon an intestacy resulted.

By virtue of the intestate laws of Pennsylvania, decedent's surviving spouse and her minor child by her previous marriage are entitled to share equally in the distributive estate.

The surviving spouse has filed his first and final account as administrator c. t. a., and said account has been confronted by objections filed on behalf of the guardian of decedent's minor daughter.

The objections relate to credits claimed in the account for a loss of $720 on the sale of 50 shares of stock of Sunshine Biscuit Company, and a loss of $1,452.19

on the sale of 211 shares of stock of United Merchants & Mfgrs. Co.

The objections relating to the sale of the 50 shares of Sunshine Biscuit Company are not being pressed by the said guardian inasmuch as it appears that the price of the stock in September 1956 (one year after decedent's death) was substantially the same as that realized on the ultimate sale in June 1957.

The United Merchants & Mfgrs. Co. stock, which was owned by decedent, was inventoried at $4,272.75, and sold on June 25, 1957, for $2,820.56, resulting in an accounting loss of $1,452.19, and the court has been requested to surcharge the accountant with such loss on the ground that the fiduciary failed to dispose of this nonlegal investment within a reasonable time as required by law.

In Seamans' Estate, 333 Pa. 358, 363-364 (1939), the general rules relating to the prompt sale of non-legal securities were formulated as follows:

"1. If a fiduciary receives nonlegal securities as part of the trust estate, he is vested by law with a measure of discretion and allowed to some extent to exercise his own judgment as to the wisdom of selling the securities under prevailing market conditions. However, in the absence of exceptional circumstances, he should convert them promptly. This does not require that he sell them *immediately*, as 'under the whip of the law,' but it means that he should not continue to hold them indefinitely merely because he believes that they will appreciate in value and would therefore retain them if they were his own securities.

"2. Under certain circumstances a fiduciary is excused from the prompt sale of nonlegal securities which is otherwise required. Such circumstances cannot be completely catalogued; they must be considered in each case as they arise. Among them may be mentioned instances where the market is so restricted that it is

reasonably impossible to sell the security; or where the offering of a large block of stock at one time would drastically break the market price; or where a security is abnormally depressed in value because of a general economic and financial collapse, so that a sale can be effected only at a sacrifice, but there is a reasonable likelihood of an early return to stable conditions which will restore the normal value. A fiduciary is not compelled to jettison seasoned investments during a temporary panic. Other exceptions to the general rule are where the will or other instrument creating the trust grants powers broad enough to justify the retention of the securities, or where the beneficiaries of the trust themselves request or agree to such retention."

Ordinarily, in the absence of special circumstances, the conversion of nonlegal securities should be made within the period of one year from the date of the granting of letters. As stated in the Restatement of the Law of Trusts, vol. 1, §230, comment b:

"b. *Time of conversion.* When there is a duty to convert trust property, the conversion must be made within a reasonable time after the creation of the trust. Ordinarily any time within a year is reasonable, but under some circumstances a year may be too long a time and under other circumstances a trustee is not liable although he fails to effect the conversion for more than a year. Thus, if there is a ready market for the property, it would usually be improper to delay the sale for a year. If, however, the property even though it has a ready market could not be sold except at a sacrifice, it may be proper for the trustee to delay the sale for more than a year. The question in each case is whether under all the circumstances the trustee acted with prudence in delaying the sale."

Where a fiduciary retains nonlegal investments beyond the period of one year, he assumes the burden of justifying his decision: Casani's Estate, 342 Pa. 468

(1941). In the instant case, the securities were not sold for a period of 21 months after the date of the granting of the original letters of administration.

The accountant seeks to excuse this delay on the ground that the register of wills would not issue a short certificate or certified copy of the will pending the aforementioned litigation and that accordingly, the requirements of the transfer agents could not be satisfied until the record had been remanded by the Supreme Court. This explanation fails to satisfy the court for the reason that the accountant made no attempt to contact the guardian of the minor's estate in order to secure an agreement for the prompt sale of the securities, and further failed to apply to this court for leave to sell the securities. The accountant would have been fully protected by either a stipulation from the guardian or by approval of this court. Instead of endeavoring to secure such approval, the guardian chose to pursue his fruitless attempts to establish the March 17th writing as decedent's last will.

The accountant having failed to establish any justification for his failure to sell the nonlegal securities within a year after the grant of letters, it follows that a surcharge must be entered. The amount of the surcharge, however, is not necessarily the difference between the inventoried value of the nonlegal securities and the proceeds of sale thereof. The accountant cannot be deemed to have been derelict in the performance of his duties to dispose of the stock until a year had past.

Accordingly, the actual loss to the estate is the difference between the market value of the stock in September 1956, and the date of sale, which has been computed to be $627.79.

It further appears, however, that dividends were regularly received on this stock during the entire period of retention. The court is of the opinion that the accountant is equitably entitled, in mitigation or reduc-

tion of the surcharge, to credit for dividends received after September 1956 (the expiration of the year within which the stock should have been sold) and June 1957 (the date of sale), or $211.

In other words, the estate is reasonably entitled to the retention of all dividends during the period of lawful retention of the nonlegal securities, but would be unjustly enriched by the retention of dividends received after the date on which a surcharge became warranted. Giving credit for such after-declared dividends of $211 against the loss of $627.79, there is a net loss of $406.79 to the estate and the accountant must be surcharged therewith.

Accordingly, the objections relating to the sale of the Sunshine Biscuit Company stock are hereby dismissed, and the objections relating to the sale of the United Merchants Mfgrs. Co. stock are hereby sustained and the accountant is hereby surcharged in the amount of $406.79 by reason thereof.